Charles M. Tebbutt, NY Bar No. 2176352
Law Offices of Charles M. Tebbutt, P.C.
941 Lawrence St.
Eugene, OR 97401
Tel: 541-344-3505
Fax: 541-344-3516
charlie@tebbuttlaw.com

Donald E. Spurrell, *pro hac vice forthcoming*
Spurrell & Studer Law Group
128 E Market St.
Johnson City, TN 37604
Phone: (423) 926-9421

*Attorneys for Plaintiff Center for Food Safety*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CENTER FOR FOOD SAFETY, INC., a Washington, D.C. non-profit corporation, <br><br> Plaintiff, <br> v. <br><br> WOOD FARMS, LLC, a New York limited liability company, <br><br> Defendant. | Case No. **5:23-cv-399 (FJS/ATB)** <br><br> COMPLAINT FOR DECLARATORY RELIEF, INJUNCTIVE RELIEF, AND CIVIL PENALTIES |

## COMPLAINT FOR DECLARATORY RELIEF, INJUNCTIVE RELIEF, AND CIVIL PENALTIES

## INTRODUCTION

1.      This is a citizen suit for declaratory relief, injunctive relief, and civil

COMPLAINT                                                                                            1

penalties brought by Plaintiff Center for Food Safety, Inc. ("Plaintiff") against Defendant Wood Farms, LLC ("Defendant" or "Wood Farms") for violations of the Federal Water Pollution Control Act, also known as the Clean Water Act, 33 U.S.C. § 1251 *et seq.* (the "CWA" or "Act"), at the site of Defendant's commercial dairy facility (the "Dairy") located in Clayton, New York.

2.      This civil action is brought pursuant to the citizen suit provision of the CWA, 33 U.S.C. § 1365(a)(1)(A).

3.      Section 301(a) of the CWA provides that "the discharge of any pollutant by any person shall be unlawful," except in accordance with certain statutory requirements of the Act, including the requirement that a discharger obtain and comply with a National Pollutant Discharge Elimination System ("NPDES") permit. 33 U.S.C. § 1311(a); 33 U.S.C. § 1342.

4.      Section 402 of the CWA establishes the NPDES Program, which controls water pollution by regulating point sources and industrial, municipal, and other facilities that discharge to surface waters. 33 U.S.C. § 1342.

5.      As detailed below, Plaintiff alleges that for the past five years and 60 days, Defendant has violated and continues to violate the CWA and applicable state water pollution laws by discharging pollutants, including animal wastes such as solid manure and liquid manure, process wastewater, and related operational waste products, to waters of the United States in violation of its general discharge permit.

6.      Plaintiff seeks declaratory relief establishing that Defendant has violated the CWA. Plaintiff also seeks injunctive relief directing Defendant to halt any and all unlawful continuing discharges and to comply with the terms of its general permit. Additionally, Plaintiff seeks the imposition of civil penalties of up to $59,973 per violation, per day, as adjusted for inflation by the U.S. Environmental Protection Agency (the "EPA").  Finally, Plaintiff requests that the Court award Plaintiff's reasonable attorneys' and expert witness fees and costs incurred in bringing this action and any other relief that this Court deems appropriate.

## JURISDICTION

7.      This is a civil enforcement action brought under the citizen suit provisions of Section 505 of the CWA, 33 U.S.C. § 1365.  This Court has subject matter jurisdiction pursuant to 33 U.S.C. § 1365(a)(1).

8.      The Court also has federal question jurisdiction pursuant to 28 U.S.C. § 1331 because this action arises under the CWA and the Declaratory Judgment Act, 28 U.S.C. § 2201, *et seq*.

9.      The relief requested is authorized pursuant to 33 U.S.C. §§1319 and 1365(a), and 28 U.S.C. §§ 2201 and 2202.

10.     On December 22, 2022, Plaintiff gave notice of the alleged violations and its intent to file suit to Defendant, Defendant's agent for service of process, the EPA, EPA Region 2, and the DEC, among others, as required by Section 505(a)(1) of the

CWA, 33 U.S.C. § 1365(a)(1), and the implementing regulations at 40 C.F.R. § 135.2. A true and correct copy of Plaintiff's notice letter is attached hereto as Exhibit "A" and is incorporated by reference.

11.    More than sixty days have passed since Defendant was initially notified of the allegations against it, and, upon information and belief, the violations complained of in the notice are continuing at this time or are reasonably likely to continue.

12.    No government authority is prosecuting a civil or criminal action in a state or federal court against Defendant for the unlawful behavior addressed in this Complaint.

## **VENUE**

13.    Venue properly vests in the U.S. District Court for the Northern District of New York pursuant to Section 505(c)(1) of the CWA, 33 U.S.C. § 1365(c)(1), because the source of the alleged violations is located within this judicial district.

## **PARTIES**

14.    Plaintiff is a public interest, non-profit membership organization.  Plaintiff's mission is to empower people, support farmers, and protect the earth from the harmful impacts of industrial agriculture. Through groundbreaking legal, scientific, and grassroots action, Plaintiff protects and promotes the public's right to safe food and the environment.

15.     Plaintiff has more than 830,000 members throughout the country that support safe, sustainable agriculture, and it has approximately 57,000 members and supporters living in the state of New York.

16.     Plaintiff's organizational purposes are adversely affected by Defendant's violations of the CWA. Defendant's violations have caused significant contamination of area surface waters and the environment. But for Defendant's unlawful actions, Plaintiff would not have to expend as much of its resources on the problems created by illegal discharges from individual large-scale industrial farming operations, and it could direct these resources to other priorities.

17.     The environmental, health, aesthetic, economic, and recreational interests of Plaintiff's members have been and will continue to be adversely affected by Defendant's violations of the CWA. Plaintiff's members support the public's right to choose food and crops not sourced from or by industrial farming practices, such as Defendant's.

18.     Upon information and belief, Wood Farms, LLC is a limited liability company organized under the laws of the state of New York, with a mailing address of 9065 County Route 9, Clayton, NY 13624.  Wood Farms, LLC owns and operates a dairy facility known as "Wood Farms," located at the same address.

19.     Wood Farms' operation is classified as a concentrated animal feeding operation, or CAFO, as defined by the CWA, 40 C.F.R. § 122.23, and it is

1    specifically considered a "large CAFO" because it has 700 or more mature dairy

2    cows. 40 C.F.R. § 122.23(b)(4).

3    20.    Wood Farms, LLC is a "person" within the meaning of Section 502(5) of the

4    CWA, 33 U.S.C. § 1362(5).

5    ## STATUTORY AND REGULATORY FRAMEWORK

6    21.    The stated objective of the CWA is "to restore and maintain the chemical,

7    physical, and biological integrity of the Nation's waters." 33 U.S.C. § 1251(a).

8    Congressional intent was that the discharge of pollutants into the Nation's waters

9    be eliminated by 1985. *Id.*

10    22.    Section 301(a) of the CWA, 33 U.S.C. § 1311(a), prohibits the discharge of

11    any pollutant into the navigable waters, unless the discharge complies with various

12    other enumerated sections of the Act. Section 301(a) prohibits discharges not

13    authorized by, or in violation of, the terms of a valid NPDES permit issued

14    pursuant to Section 402(p) of the CWA, 33 U.S.C. § 1342(p).

15    23.    "Navigable waters" are broadly defined as "the waters of the United States."

16    33 U.S.C. § 1362(7).

17    24.    The "discharge of a pollutant" means any "addition of a pollutant to

18    navigable waters from any point source." 33 U.S.C. § 1362(12). "Pollutant" is

19    defined to include "industrial, municipal, and agricultural waste discharged into

20    water." 33 U.S.C. § 1362(6). "The term 'point source' means any discernable,

confined and discrete conveyance, including but not limited to any pipe, ditch,

channel, tunnel, conduit, well, discrete fissure, container, rolling stock,

concentrated animal feeding operation, landfill leachate collection system . . . from

which pollutants are or may be discharged." 33 U.S.C. § 1362(14); 40 C.F.R. §

122.2.

25.    Section 402 of the CWA establishes the NPDES program, which allows

each State to administer its own permit program upon approval by the EPA. 33

U.S.C. § 1342(b). This section provides that "compliance with a permit issued

pursuant to this section shall be deemed compliance . . . with section[] 1311 . . . of

this title." 33 U.S.C. § 1342(k).

26.    The EPA has delegated the relevant portion of the administration of the

NPDES permit program in New York to the New York State Department of

Environmental Conservation (the "DEC"), which administers the State Pollutant

Discharge Elimination System ("SPDES") program in conformity with the CWA

pursuant to Chapter 43-B, Article 17 of the Consolidated Laws of New York, the

Environmental Conservation Law ("ECL"). ECL § 17-0801. The DEC administers

the SPDES program by issuing individual permits and approving coverage under

general permits, including a general CAFO permit, Permit No. GP-0-16-001 (the

"2017 General Permit"), issued pursuant to Article 17, Title 7, and Article 70 of

the ECL. The 2017 General Permit remained in effect for existing facilities until

COMPLAINT                                                                                    7

January 23, 2023, the effective date of its replacement permit, Permit No. GP-0-22-001 (the "2022 General Permit" and, together with the 2017 General Permit, the "General Permits").

27.    Once regulated by a SPDES permit, permittees must comply with all terms and conditions of that permit. The CWA authorizes citizens to file suit against any person alleged to be in violation of an effluent standard or limitation. 33 U.S.C. § 1365(a)(1). An "effluent standard or limitation" includes a "permit or condition thereof issued under section 1342." 33 U.S.C. § 1365(f)(7). Noncompliance with a permit constitutes a violation of the Act and the ECL. *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 174 (2000); 2017 General Permit § V(A); 2022 General Permit § V(A) ("Any noncompliance with the terms and conditions of this SPDES general permit constitutes a violation of the New York State Environmental Conservation Law"); *see also Humane Soc. Of U.S. v. HVFG, LLC*, No. 06 Civ. 6829(HB0), 2010 WL 1837785, at *11 (S.D.N.Y. May 18, 2010) ("It is abundantly clear from the statutory language, case law, and the permits themselves that a violation of the requirements of either permit is a violation of the CWA").

28.    Under the terms of the General Permits, covered CAFOs must submit an Annual Compliance Report form to the DEC. 2017 General Permit § IV(D); 2022 General Permit § IV(D). The 2017 General Permit requires that "all reports and

information submittals supplied to the Department shall contain complete information." 2017 General Permit § V(E). It further states that "[t]he owner/operator must comply with all conditions of this general permit. Any permit noncompliance constitutes a violation of the Environmental Conservation Law." 2017 General Permit § V(A). The 2022 General Permit states, "Any person who knowingly makes any false material statement, representation . . . in any record . . . required to be maintained under this SPDES general permit . . . shall . . . be punished in accordance with [New York Law]." 2022 General Permit § V(D).

## **FACTS**

29.     All preceding paragraphs are incorporated herein.

*Wood Farms, LLC's Dairy Operation*

30.     Defendant submitted its initial Notice of Intent for general permit coverage under the name Henry Wood & Sons, a partnership, to the DEC on or around December 20, 1999, which such coverage was granted on January 4, 2000. In a filing to the DEC on July 1, 2002, Defendant listed its name as "Wood Farms LLC."

31.     Messrs. Lyle J. Wood and Scott F. Bourcy are co-owners/operators of Defedandant.

32.     According to public records, Defendant controls approximately 1,236 acres for the land application of manure.

COMPLAINT                                                                                  9

33.     According to public records, during 2021, Wood Farms confined 1,200 mature dairy cows and 1,080 dairy heifers. As described in its 2013 Notice of Intent filing with the DEC, Wood Farms generates both liquid and solid manure. It stores the liquid manure in earthen manure cesspits or lagoons, which it removes via pumps and loads into trucks for land application. The lagoons leak to the soils, which leakage then discharges into the environment through groundwater movement and eventual discharge to the St. Lawrence River. The solid manure is removed from barns on a daily to weekly basis and land applied via manure spreaders.

*Wood Farms' Unpermitted Discharges*

34.     Upon information and belief, Plaintiff alleges that Wood Farms has repeatedly discharged pollutants into the St. Lawrence River and tributaries leading to it, including Wheeler Creek; Lake Ontario and tributaries leading to it, including Kents Creek and Mud Bay; and adjacent tributaries, ditches, and wetlands (collectively, the "Wood Farms Discharge Waters").

35.     The Wood Farms Discharge Waters are either "waters of the United States," or, as "discernable, confined and discrete conveyance[s]," are point sources under the CWA.

36.     Upon information and belief, Plaintiff alleges that Wood Farms has discharged and continues to discharge pollutants into the the Wood Farms

Discharge Waters in one or more of the following ways:

    a.  First, Wood Farms has discharged, continues to discharge, and is reasonably likely to continue to discharge process wastewater to surface waters of the State, which excludes Wood Farms from coverage under Section I(A)(3)(d) of the General Permits;

    b.  Second, in addition or in the alternative, Wood Farms has discharged, continues to discharge, and is reasonably likely to continue to discharge  manure from its production area to surface waters of the State in violation of Section I(B)(1) of the General Permits;

    c.  Third, in addition or in the alternative, Wood Farms has discharged, continues to discharge, and is reasonably likely to continue to discharge manure or process wastewater in saturated conditions, including applications made on saturated soils (either fluid-saturated or frozen-saturated soil conditions) or applications made at a rate that creates or causes the soil to become saturated at the time of that application, in both cases in violation of Section III(A)(8)(a) of the General Permits; and

    d.  Fourth, in addition or in the alternative, Wood Farms has discharged, continues to discharge, and is reasonably likely to continue to discharge manure or process wastewater to land application areas

during winter months to snow-covered or frozen lands without conforming to the 2015 Cornell Guide, "Revised winter and wet weather manure spreading guidelines to reduce water contamination risk" or the NRCS NY590 Standard, and without identifying specific low-risk fields to be used for winter weather applications in its Comprehensive Nutrient Management Plan, in both cases in violation of Section III(A)(8)(c) of the General Permits. Wood Farms has also overapplied manure to application fields. Such applications include a multitude of out-of-season applications, including December 2021 and numerous other times not available to Plaintiff as such information is not available to the public.

37.    The pollutants in these discharges include, but are not limited to, liquid and solid animal wastes. The animal wastes contain, among other pollutants, fecal coliform and E. coli bacteria, numerous other pathogens, nitrogen, phosphorus, and suspended solids, and can alter water quality indicator parameters such as biochemical oxygen demand and pH. Such pollution, especially the pathogens associated with dairy operations, presents threats to public health and the environment.

38.    Upon information and belief, the discharges through one or more of the above-described means occur on a recurring basis, as evidenced by photographs

COMPLAINT                                                                                    12

and water samples. The four images below, taken at Wheeler Creek near its
confluence with the St. Lawrence River on or around January 6, 2023, show a
substantial degree of foam formation, caused by phosphorus and other pollutants
in Wood Farms' manure or process water discharges.

 

 

39.     Moreover, the same is evident in the below four photographs, which were
also taken at Wheeler Creek's confluence with the St. Lawrence River in February

2019.

 

 

40.     The photographs of discharge in January 2023 and February 2019 are similar

to photographs of the discharges that occurred in March 2014, pictured below.

 

41.     Wood Farms was cited for these 2014 violations of the ECL. On July 17,

COMPLAINT                                                                                          14

2014, the DEC issued Wood Farms a Notice of Violation of the ECL in relation to an unpermitted overflow pipe from the facility's oil and water separator. Other discharges occurred as a result of overapplication or improper application of manure during the winter of 2013-2014, which are depicted in the photographs reproduced herein. Furthermore, on November 3, 2008, the DEC issued a Notice of Violation for, among other things, process wastewater from the Bunk Silo that was reaching the tributary to Wheeler Creek and process wastewater from a floor drain in the milking parlor that was being discharged to a drainage and flowing into a stream. While those 2014 and 2008 issues are no longer subject to civil penalties, they demonstrate the ongoing and continuous nature of Wood Farms' pattern and practice of discharges, which in turn cause water quality violations that threaten human health and the environment.

42.     In addition, water quality results from Wheeler Creek, near its confluence with the St. Lawrence River, indicate Total Coliform of 16,000 CFUs/100 mL and E. coli of 5,794 CFUs/100 mL on October 19, 2022. The high levels of those bacteria caused by Wood Farms' discharges also constitute a violation of Section I(B)(3) of the General Permits, which require that discharges not cause or contribute to a violation of water quality standards as contained in Parts 700 through 705 of Title 6 of the Official Compilation of Codes, Rules and Regulations of the State of New York. That section sets standards for monthly median Total

Coliform samples at between 50 to 1,000 CFUs per 100 mL, depending on the

class, and E. coli at 126 CFUs per 100 mL, in all cases substantially lower than the

sample here. 6 CRR-NY 703.4.

## CLAIMS FOR RELIEF

### COUNT I

**Discharge of Pollutants
in Violation of SPDES Permit**

43.    Plaintiff incorporates the allegations contained in the above paragraphs as

though fully set forth herein.

44.    Section 301 of the CWA, 33 U.S.C. § 1311(a), prohibits the discharge of

pollutants unless pursuant to the terms of a valid NPDES/SPDES permit issued

pursuant to Section 402 of the CWA, 33 U.S.C. § 1342.

45.    The Wood Farms Discharge Waters are all "waters of the United States"

subject to the CWA or are "point sources" from which pollutants are being

discharged to the St. Lawrence River, a "water of the United States."

46.    Wood Farms has discharged, continues to discharge, and is reasonably likely

to continue to discharge pollutants associated with its CAFO operation in one or

more of those ways enumerated in Paragraphs 36-40, for example, by discharging

process wastewater to surface waters of the State; by discharging manure from its

production area to surface waters of the State; by discharging manure or process

wastewater in saturated conditions; and by improperly discharging manure or

COMPLAINT                                                                                    16

1   process wastewater to land application areas during winter months to snow-

2   covered or frozen lands; and by overapplying manure to application fields; in each

3   case in violation of the General Permits.

4   47.   Each discharge that Wood Farms has committed since commencing

5   operations constitutes a separate and distinct violation of the CWA.

6   48.   In discharging manure or process wastewater in violation of the General

7   Permits, Wood Farms has violated and continues to violate section 301(a) of the

8   CWA, 33 U.S.C. § 1311(a).

9                                    **COUNT II**

10       **Failure to Comply with SPDES Permit Reporting Requirements**

11  49.   Plaintiff incorporates the allegations contained in the above paragraphs as

12  though fully set forth herein.

13  50.   The CWA prohibits the violation of a permit. 33 U.S.C. § 1365(a)(1) and

14  1365(f)(7); *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528

15  U.S. at 174. The 2017 General Permit requires an Annual Compliance Report

16  form, which must contain "complete information"; any noncompliance constitutes

17  a violation of the ECL. 2017 General Permit § IV(D), V(A), V(E). The 2022

18  General Permit prohibits any person from knowingly making a false material

19  statement in any material record submitted to the DEC. 2022 General Permit §

20  V(D).

51.     As described herein, Wood Farms has failed to comply with the foregoing recordkeeping requirements of the General Permits and is likely to continue to do so. In particular, the Annual Compliance Report forms that Wood Farms has submitted to the DEC contain numerous, statistically-impossible repetitive entries regarding manure, litter, and process wastewater generated. To wit, among other things, the 2021, 2020, and 2019 forms all list 10,266,696 gallons of manure generated for each of those respective years; the 2021, 2020, 2019, 2018, and 2016 forms all list 611 tons of litter generated for each of those respective years (the 2017 form is not yet available to Plaintiff); and the 2021, 2020, 2019, 2018, 2016, 2015, 2014, and 2013 forms all list 2,085,533 gallons of process wastewater generated for each of those respective years. It is statistically impossible that each of those identical entries could be accurate by coincidence; instead, Wood Farms appears to have replicated entries in lieu of providing updated, accurate numbers. Therefore, Wood Farms has failed, perhaps knowingly, to provide complete information in its reports to the DEC, contrary to the General Permits, and it has thus also violated the ECL and CWA through permit noncompliance.

### **RELIEF REQUESTED**

WHEREFORE, Plaintiff respectfully requests that the Court enter a judgment:

A.     Declaring that Wood Farms has violated and continues to be in violation of Section 301(a) of the Clean Water Act, 33 U.S.C. § 1311(a), for the unlawful discharges of pollutants associated with it dairy operations to waters of the United States;

B.     Declaring that Wood Farms has violated and continues to be in violation of Section 505(a) of the Clean Water Act, 33 U.S.C. § 1365(a), for violating the recordkeeping component of its General Permit;

C.     Enjoining Wood Farms from discharging pollutants from its Dairy into waters of the United States except as authorized by and in compliance with the 2022 General Permit;

D.     Enjoining Wood Farms from operating earthen lagoons that leak;

E.     Ordering Wood Farms to comply fully and immediately with the recordkeeping requirements of the General Permits;

F.     Ordering Wood Farms to pay civil penalties of up to $59,973 per day, per violation, for all violations of the Clean Water Act at the Dairy site, pursuant to Sections 309(d) and 505(a) of the CWA, 33 U.S.C. §§ 1319(d), 1365(a), and 40 C.F.R. §§19.1-19.4;

G.     Ordering Wood Farms to remediate any harm caused by Wood Farms' noncompliance with the Clean Water Act and to eliminate any potential for future harm;

L.     Ordering Wood Farms to pay Plaintiff's reasonable attorneys' fees, expert

witness fees, and costs incurred in prosecuting this action pursuant to 33 U.S.C. §

1365(d); and

///

M.     Awarding any such other relief as the Court may deem just and proper.

Dated: March 29, 2023.

        Respectfully Submitted,

/s/ Charles M. Tebbutt
Charles M. Tebbutt,
LAW OFFICES OF CHARLES M.
TEBBUTT, P.C.
941 Lawrence St.
Eugene, OR 97401
Tel: 541-344-3505
Fax: 541-344-3516
E-mail: Charlie@tebbuttlaw.com

/s/ Donald E. Spurrell
Donald E. Spurrell, *pro hac vice*
*forthcoming*
Spurrell & Studer Law Group
128 E Market St.
Johnson City, TN 37604
Phone: (423) 926-9421
E-mail: don@spurrell-lawgroup.com

*Attorneys for Plaintiff Center for Food*
*Safety*

COMPLAINT                                                                    20