## Law Offices of
## Charles M. Tebbutt, P.C.
**941 Lawrence Street**
**Eugene, OR 97401**
**Ph: 541-344-3505 Fax: 541-344-3516**

December 22, 2022

### THIS IS AN URGENT LEGAL MATTER REQUIRING YOUR IMMEDIATE ATTENTION

*Via Certified Mail, Return Receipt Requested:*

Lyle J. Wood, Co-Owner
Wood Farms, LLC
9065 County Route 9
Clayton, NY 13624

Scott F. Bourcy, Co-Owner
Wood Farms, LLC
9065 County Route 9
Clayton, NY 13624

THE LLC, Registered Agent
9065 County Route 9
Clayton, NY 13624

**NOTICE OF INTENT TO SUE PURSUANT TO THE FEDERAL WATER POLLUTION CONTROL ACT, 33 U.S.C. § 1365(a)(1), THE RESOURCE CONSERVATION AND RECOVERY ACT, 42 U.S.C. § 6972(a)(1)(B), AND OTHER CAUSES OF ACTION**

Dear Messrs. Wood and Bourcy:

Pursuant to the citizen suit provisions of the Federal Water Pollution Control Act, 33 U.S.C. § 1365(a)(1) (the "Clean Water Act" or "CWA"), the Center for Food Safety ("Notifier"), hereby notifies you that on or after the 60th day from the date of this notice, Notifier intends to initiate a citizen suit in Federal District Court against Wood Farms, LLC ("Wood Farms"), located at or near 9065 County Route 9, Clayton, NY 13624. The lawsuit will allege that Wood Farms has violated and remains in violation of the Clean Water Act and applicable state water pollution control laws by discharging pollutants, including animal wastes such as solid manure and liquid manure, process wastewater, and related operational waste products, to waters of the United States in violation of its general discharge permit. The animal waste contains nitrogen,

phosphorus, heavy metals, bacteria and other pathogens, as well as hormones and antibiotics used on the animals, which are harmful to human health and the environment.

Additionally, pursuant to the citizen suit provisions of the Resource Conservation and Recovery Act ("RCRA"), 42 U.S.C. § 6972(a)(1), Notifier also hereby notifies you that on or after the 90th day from the date of this notice, Notifier may initiate a citizen suit in Federal District Court against Wood Farms for causing or contributing to an imminent and substantial endangerment to human health and the environment.

## LEGAL FRAMEWORK

The Clean Water Act is the cornerstone of surface water quality protection in the United States. Sections 301 and 402 of the CWA establish the basic requirements that the discharge of pollutants into waters of the United States requires a permit before any such discharge is allowed. Section 301 of the CWA provides that "except as in compliance with . . . section . . 1342 . . . of this title, the discharge of any pollutant by any person shall be unlawful." 33 U.S.C. § 1311(a). Section 402 of the CWA establishes the NPDES Program, which controls water pollution by regulating point sources. Concentrated animal feeding operations, or CAFOs, are point sources under the Clean Water Act. 33 U.S.C. § 1362(14). As such, a CAFO is prohibited from discharging pollutants into waters of the United States unless that CAFO has coverage under and complies with a general or individual NPDES permit. 33 U.S.C. § 1311(a). Wood Farms qualifies as a "Large CAFO" because it has far more than 700 mature dairy cows. 40 C.F.R. § 122.23(b)(4).

The Environmental Protection Agency delegates the relevant portion of the administration of the NPDES permit program in New York to the New York State Department of Environmental Conservation (the "DEC"), which administers the State Pollutant Discharge Elimination System ("SPDES") program in conformity with the CWA pursuant to Chapter 43-B, Article 17 of the Consolidated Laws of New York, the Environmental Conservation Law ("ECL"). ECL § 17-0801. The DEC administers the SPDES program by issuing individual permits and approving coverage under general permits, including a general CAFO permit, Permit No. GP-0-16-001 (the "2017 General Permit"), issued pursuant to Article 17, Title 7, and Article 70 of the ECL. The 2017 General Permit remains in effect for existing facilities until January 23, 2023, the effective date of its replacement permit, Permit No. GP-0-22-001 (the "2022 General Permit" and, together with the 2017 General Permit, the "General Permits").

Once regulated by a SPDES permit, permittees must comply with all terms and conditions of that permit. The Clean Water Act authorizes citizens to file suit against any person alleged to be in violation of an effluent standard or limitation. 33 U.S.C. § 1365(a)(1). An "effluent standard or limitation" includes a "permit or condition thereof issued under section 1342." 33 U.S.C. § 1365(f)(6). Any violation of the General Permits constitutes a violation of the CWA and the ECL. *Humane Soc. Of U.S. v. HVFG, LLC*, No. 06 Civ. 6829(HB0), 2010 WL 1837785, at *11 (S.D.N.Y. May 18, 2010) ("It is abundantly clear from the statutory language, case law, and the permits themselves that a violation of the requirements of either permit is a violation of the CWA"); 2017 General Permit § V(A); 2022 General Permit § V(A).

Applicable federal regulations define two primary parts of a CAFO: the "production area" and the "land application area." The "production area" includes "the animal confinement area, the manure storage area, the raw materials storage area, and the waste containment areas. The animal confinement area includes but is not limited to open lots, housed lots, feedlots, confinement houses, stall barns, free stall barns, milkrooms, milking centers, cowyards, barnyards, medication pens, walkers, animal walkways, and stables. The manure storage area includes but is not limited to lagoons, runoff ponds, storage sheds, stockpiles, under house or pit storages, liquid impoundments, static piles, and composting piles. The raw materials storage area includes but is not limited to feed silos, silage bunkers, and bedding materials. The waste containment area includes but is not limited to settling basins, and areas within berms and diversions which separate uncontaminated storm water." 40 C.F.R. § 122.23(b)(8). The "land application area" means "land under the control of an [CAFO] owner or operator, whether it is owned, rented, or leased, to which manure, litter or process wastewater from the production area is or may be applied." *Id.* § 122.23(b)(3).

For CAFO production areas, the discharge of manure or process wastewater[1] is strictly prohibited. The only regulatory exception is when precipitation causes an "overflow[2]" of manure or process wastewater; in that circumstance, a discharge is authorized only to the extent that (1) the production area is designed, constructed, operated and maintained to contain all manure . . . and process wastewater including the runoff and the direct precipitation from a 25-year, 24-hour rainfall event, and (2) the production area is operated in accordance with the additional measures and record-keeping requirements found in 40 C.F.R. § 412.37(a) and (b). *See* 40 C.F.R. § 412.31(a). Also, for this exception to apply, the facility must first have a valid NPDES permit.

For CAFO land application areas, the discharge of manure or process wastewater is prohibited. Only precipitation-caused discharges are allowed – so-called "agricultural stormwater" – and only where the application of manure or process wastewater has been accomplished in accordance with the NPDES/SPDES permit, including site-specific nutrient management practices that ensure the appropriate agricultural utilization of nutrients, consistent with 40 C.F.R. § 122.42(e)(1)(vi)-(ix).

## VIOLATIONS OF THE CLEAN WATER ACT AND THE RESOURCE CONSERVATION AND RECOVERY ACT

Notifier intends to initiate a citizen suit on or after the 60th day from the date of this letter against Wood Farms for violating the Clean Water Act and polluting the St. Lawrence River, Lake Ontario, and adjacent streams and tributaries. Upon information and belief, Wood Farms

---

[1] "Process wastewater" is defined as "water directly or indirectly used in the operation of the CAFO for any or all of the following: spillage or overflow from animal or poultry watering systems; washing, cleaning, or flushing pens, barns, manure pits, or other CAFO facilities; direct contact swimming, washing, or spray cooling of animals; or dust control. Process wastewater also includes any water which comes into contact with any raw materials, products, or byproducts including manure, litter, feed, milk, eggs, or bedding." 40 C.F.R. § 412.2(d). In this regard, run-on water from upland areas that comes into contact with any raw materials, products, or byproducts at Wood Farms, including manure from dairy cows, constitutes "process wastewater."

[2] An "overflow" means "the discharge of manure or process wastewater resulting from the filling of wastewater or manure storage structures beyond the point at which no more manure, process wastewater, or storm water can be contained by the structure." 40 C.F.R. § 412.2(g).

(DEC SPDES Number: NYA00E390) does not have an individual SPDES permit; rather, Wood Farms is covered under the 2017 General Permit. The lawsuit will allege that Wood Farms has discharged and continues to discharge animal wastes, including liquid and solid manure and related process wastewater into waters of the United States, including tributaries, ditches, wetlands, the St. Lawrence River, and tributaries that lead to Lake Ontario, including Kents Creek and Mud Bay, in violation of the 2017 General Permit. The Wood Farms property includes land in the Kents Creek watershed on which Wood Farms applies animal waste.

In particular, on information and belief, Notifier will allege the following: First, Wood Farms has discharged, continues to discharge, and is reasonably likely to continue to discharge process wastewater to surface waters of the State, which excludes Wood Farms from coverage under Section I(A)(3)(d) of the General Permits. Second, in addition or in the alternative, Wood Farms has discharged, continues to discharge, and is reasonably likely to continue to discharge manure from its production area to surface waters of the State in violation of Section I(B)(1) of the General Permits. Third, in addition or in the alternative, Wood Farms has discharged, continues to discharge, and is reasonably likely to continue to discharge manure or process wastewater to land application areas during winter months to snow-covered or frozen lands without conforming to the 2015 Cornell Guide, "Revised winter and wet weather manure spreading guidelines to reduce water contamination risk" or the NRCS NY590 Standard, and without identifying specific low-risk fields to be used for winter weather applications in its Comprehensive Nutrient Management Plan, in both cases in violation of Section III(A)(8)(c) of the General Permits. Such applications include a multitude of out-of-season applications, including December 2021 and numerous other times not available to Notifier as such information is not available to the public.

Moreover, in addition or in the alternative to the above permit violations, Wood Farms is a generator, transporter, and owner and/or operator of a treatment, storage, and disposal facility that is contributing to the past and present storage, treatment, transportation and/or disposal of solid wastes, namely liquid and solid manure. Wood Farms' liquid and solid manure constitute "solid wastes" under RCRA because they are "any...discarded material, including solid, liquid, semisolid, or contained gaseous material resulting from industrial, commercial, mining, and agricultural operations..." 42 U.S.C. § 6903(27). Wood Farms' practices in storing, treating, transporting, applying, and disposing of liquid and solid manure may, and do, present an imminent and substantial endangerment to the health of nearby residents and to the environment in violation of the Resource Conservation and Recovery Act, 42 U.S.C. § 6972(a)(1)(B). Specifically, Wood Farms employs earthen, rather than synthetic, liners in its three manure lagoons that permit the downward migration of manure-related contaminants. Even liners constructed to Natural Resource Conservation Service 313 standards for manure storage impoundments, which Wood Farms' lagoon liners may or may not meet, can still leak significant quantities of manure constituents into groundwater. Such leakage constitutes disposal of manure, which percolates to groundwater that then leads to further discharges of nitrogen and phosphorus, among other pollutants, to the St. Lawrence River and to the drinking water of area residents. Furthermore, applications of manure beyond which the current crop can effectively utilize as fertilizer cause nitrates to leach through soil and into groundwater. Once these nitrates enter the local water table, they migrate away from Wood Farms' dairy facility and into

groundwater and, consequently, the wells of nearby residents. Both RCRA and the Safe Drinking Water Act set safety limits of nitrate in drinking water at 10 parts per million (ppm).

Water samples and photographs indicate a pattern and practice of regular discharges through one or more of the above-described means from the facility. For instance, water quality results from Wheeler Creek, near its confluence with the St. Lawrence River, indicate Total Coliform of 16,000 CFUs/100 mL and E. coli of 5,794 CFUs/100 mL on October 19, 2022. The high levels of those bacteria caused by Wood Farms' discharges also constitute a violation of Section I(B)(3) of the General Permits, which require that discharges not cause or contribute to a violation of water quality standards as contained in Parts 700 through 705 of Title 6 of the Official Compilation of Codes, Rules and Regulations of the State of New York. That section sets standards for monthly median Total Coliform samples at between 50 to 1,000 CFUs per 100 mL, depending on the class, and E. coli at 126 CFUs per 100 mL, in all cases substantially lower than the sample here. 6 CRR-NY 703.4.

A number of photographs of the adjacent area taken at Wheeler Creek's confluence with the St. Lawrence River in February 2019, reproduced below, also evidence Wood Farms' unlawful discharges. Then photographs show a substantial degree of foam formation, which is caused by Wood Farms' discharge of manure or process wastewater.







The photographs of discharge in February 2019 are similar to the discharges that occurred in March 2014. See photographs of the latter below.




Wood Farms was cited for these 2014 violations of the ECL. On July 17, 2014, the DEC issued Wood Farms a Notice of Violation of the ECL in relation to an unpermitted overflow pipe from the facility's oil and water separator. Other discharges occurred as a result of overapplication or improper application of manure during the winter of 2013-2014, which are depicted in the photographs reproduced herein. Furthermore, on November 3, 2008, the DEC issued a Notice of Violation for, among other things, process wastewater from the Bunk Silo that was reaching the tributary to Wheeler Creek and process wastewater from a floor drain in the milking parlor that was being discharged to a drainage and flowing into a stream. While those particular issues are no longer subject to civil penalties, they demonstrate the ongoing and continuous nature of Wood Farms' pattern and practice of discharges, which in turn cause water quality violations that threaten health and the environment.

The just-concluded 15th Conference of the Parties to the United Nations Convention on Biodiversity in Montreal recognized that agricultural pollution is a significant threat not only to water quality but also to species survival. The Wood Farms discharges are an example of the threat.

In addition, Wood Farms' recordkeeping is highly suspect. Section IV(D) of the 2017 General Permit requires Wood Farms to submit an Annual Compliance Report form to the DEC, and Section V(E) of the 2017 General Permit requires that "all reports and information submittals supplied to the Department shall contain complete information." Moreover, pursuant to Section V(A) of the 2017 General Permit, "The owner/operator must comply with all conditions of this general permit. Any permit noncompliance constitutes a violation of the Environmental Conservation Law."

The Annual Compliance Report forms that Wood Farms has submitted to the DEC contain numerous, statistically-impossible repetitive entries regarding manure, litter, and process wastewater generated. To wit, among other things, the 2021, 2020, and 2019 forms all list 10,266,696 gallons of manure generated for each of those respective years; the 2021, 2020, 2019, 2018, and 2016 forms all list 611 tons of litter generated for each of those respective years; and the 2021, 2020, 2019, 2018, 2016, 2015, 2014, and 2013 forms all list 2,085,533 gallons of process wastewater generated for each of those respective years. It is highly unlikely that each of those identical entries could be accurate by coincidence; instead, Wood Farms appears to have replicated entries in lieu of providing updated, accurate numbers. Therefore, Wood Farms has failed, perhaps knowingly, to provide complete information in its reports to the DEC, contrary to the 2017 General Permit, and has thus also violated the ECL and CWA through permit noncompliance.

Finally, aside from violating the CWA, ECL, and RCRA, Wood Farms' activities constitute a public nuisance. Wood Farms is less than one-half mile from Thousand Islands High/Middle School and Thousand Islands Central School. Children and staff from those schools complain about the smell, as do neighbors; ammonia, hydrogen sulfide, organic volatile compounds, and other pollutants from Wood Farms are significantly interfering with their ability to safely enjoy the property. Noxious odors from the operations affect the community surrounding Wood Farms. Odors from Wood Farms' operations have been detected in the middle of the St. Lawrence River, miles from the operations. In addition to foul odors, pathogens and allergens associated with CAFO operations are known to travel through the air for miles, thus posing additional risks of asthma and allergic reactions as well as headaches, respiratory problems, eye irritation, nausea, weakness, and chest tightness.

## INJUNCTIVE RELIEF & CIVIL PENALTIES

Notifier will seek injunctive relief in the lawsuit requiring Wood Farms to abate all discharges; to install appropriate pollution control technology, including synthetic lagoon liners; and to implement proper recordkeeping and application practices. Notifier will also request in the lawsuit that Wood Farms comes into full compliance with the General Permits and obtain an individual NPDES/SPDES permit.

Liability for violating the Clean Water Act is strict, and each violation is subject to a civil penalty. The present civil penalty amount per violation per day is $59,973, as adjusted for inflation by EPA. *See* 87 FR 1676. Notifier will allege in the lawsuit that Wood Farms has discharged, continues to discharge, and is reasonably likely to continue to regularly discharge pollutants for the past five years and into the future, subjecting Wood Farms to a daily penalty of

up to $59,973 per violation. Notifier will ask that the Court impose the maximum civil penalty authorized by law.

Under RCRA, Notifier may seek injunctive relief requesting cessation of discharges, and mandatory injunctive relief in the form of synthetic lining of all manure holding structures, and other changes in operations to stop the discard of animal waste, all of which are causing or contributing to an imminent and substantial endangerment to health and the environment.

Finally, as authorized by the Clean Water Act and RCRA, Notifier will seek an order from the Court requiring Wood Farms to pay Notifier's attorneys' fees and costs, including expert witnesses' fees and costs.

## PARTIES GIVING NOTICE

The name, address, and phone number of the party giving this Notice of Intent to Sue is:

Center for Food Safety
303 Sacramento St, 2nd floor
San Francisco, CA 94111
Phone: (415) 826-2770

The names, addresses, and phone numbers of counsel for the parties giving this Notice of Intent to Sue are:

Charles M. Tebbutt
Jonathan D. Frohnmayer
Law Offices of Charles M. Tebbutt, P.C.
941 Lawrence St.
Eugene, OR 97401
Tel: 541-344-3505
Fax: 541-344-3516
charlie@tebbuttlaw.com
jon@tebbuttlaw.com

Amy van Saun
Center for Food Safety
303 Sacramento St, 2nd floor
San Francisco, CA 94111
Phone: (415) 826-2770

Donald E. Spurrell
Spurrell & Studer Law Group
128 E Market St.
Johnson City, TN 37604
Phone: (423) 926-9421

## CONCLUSION

We will be available to discuss effective remedies and actions that will assure Wood Farms' future compliance with the Clean Water Act and Resource Conservation and Recovery Act, and all other applicable state and federal environmental laws. If you wish to avail yourself to this opportunity and avoid the need for adversarial litigation, or if you have any questions regarding this letter, please contact the undersigned. If you are or will be represented by an attorney, please have that attorney contact the undersigned instead.

        Sincerely,

        Charles M. Tebbutt
        Law Offices of Charles M. Tebbutt, P.C.

*cc: Via Certified Mail, Return Receipt Requested, to the following:*

| |
|---|
| Michael S. Regan, Administrator<br>U.S. Environmental Protection Agency, Mail Code 1101A<br>1200 Pennsylvania Avenue, N.W.<br>Washington, DC 20460 |
| Lisa F. Garcia, Regional Administrator<br>U.S. Environmental Protection Agency, Region 2<br>290 Broadway<br>New York, NY 10007-1866 |
| Basil Seggos, Commissioner<br>New York State Department of Environmental Conservation<br>625 Broadway<br>Albany, New York 12233-0001 |
| Randall Young, Regional Director<br>New York State Department of Environmental Conservation, Region 6<br>317 Washington St.<br>Watertown, NY 13601-3787 |
| The Honorable Merrick P. Garland<br>Attorney General<br>U.S. Department of Justice<br>950 Pennsylvania Avenue, NW<br>Washington, DC 20530-0001 |
| The Honorable Kathy Hochul<br>Governor of New York State<br>NYS State Capitol Building<br>Albany, NY 12224 |
| The Honorable Letitia James<br>New York State Attorney General<br>Office of the Attorney General<br>The Capitol<br>Albany, NY 12224-0341 |