UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

Center for Food Safety, Inc.,
*a Washington, D.C. non-profit corporation*

                        Plaintiff,
   v.                                            5:23-CV-399 (MJK)

Wood Farms, LLC,
*a New York limited liability company*

                        Defendants.
_____

Charles M. Tebbutt, Esq., for Plaintiff
Donald E. Spurrell, Esq., for Plaintiff
David L. Cook, Esq., for Defendants
Nicholas Roberts, Esq., for Defendants

Mitchell J. Katz, United States Magistrate Judge

## ORDER

In this Federal Water Pollution Control Act (Clean Water Act) case, Center for Food Safety alleges that pollutants from Wood Farms' production area is reaching the farm's inlets and polluting the navigable waters of the United States. Before the Court is Food Safety's motion for partial summary judgment. (Dkt. 122). Wood Farms responded, and Food Safety replied. (Dkts. 125, 126). On December 11, 2025, the Court heard oral argument. (Dkt. 146). For the reasons below,

1

the Court grants Wood Farm summary judgment on the production area issue.

I.  **BACKGROUND**

The Court assumes the parties' familiarity with the facts. Food Safety moves for partial summary judgment on two issues: (1) "whether the release of pollutants from the two surface inlets and the post-[Vegetative Treatment Area ("VTA")] constitutes the discharge of pollutants from the production area in violation of" Wood Farms' discharge permit, and (2) whether certain potential defenses are inapplicable. (Food Safety Memo of Law, Dkt. 122-2, at pg. 7). In opposition, Wood Farms argues that summary judgment should be denied. (Wood Farms, Memo of Law, Dkt. 125-7).

II.  **STANDARD OF REVIEW**
**Summary Judgment**

"Summary Judgment is appropriate only if the movant shows that there is no genuine issue as to any material fact." *Tolan v. Cotton*, 572 U.S. 650, 656-57 (2014) (cleaned up). When deciding if there is a genuine issue of material fact, courts "must view the evidence in the light most favorable to the" non-moving party. *Id.* at 656 (cleaned up).

Likewise, courts must "resolve all ambiguities, and credit all factual inferences that could rationally be drawn, in favor of the party opposing summary judgment." *Kessler v. Westchester County Dep't of Social Services,* 461 F.3d 199, 206 (2d Cir. 2006). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

"The moving party bears the initial burden of showing that there is no genuine dispute as to a material fact." *CILP Assocs., L.P. v. Pricewaterhouse Coopers LLP*, 735 F.3d 114, 123 (2d Cir. 2013) "When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec.,* 475 U.S. at 586. "The nonmoving party may not rely on mere conclusory allegations nor speculation but instead must offer some hard evidence showing that its version of the events is not wholly fanciful." *D'Amico v. City of New York,* 132 F.3d 145,149 (2d Cir. 1998) (cleaned up).

"If the defendant in a run-of-the-mill civil case moves for summary judgment," judges "must ask" themselves "not whether" they "think the

evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented. The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). "A court cannot credit a plaintiff's merely speculative or conclusory assertions." *DiStiso v. Cook,* 691 F.3d 226, 230 (2d Cir. 2012).

## III. DISCUSSION

### The Court grants summary judgment to Wood Farm on the issue of the production area.

To survive summary judgment there must be no genuine issues of material fact. Here, there is no genuine issue as to the production area. Using traditional canons of statutory construction, the Court finds that the regulations create designated-static areas, and those are static areas are the production area. Because no factual disputes exist as to the production area, the Court grants Wood Farms summary judgment.[1]

---

[1] Wood Farms did not cross move for summary judgment. But the Court construes Wood Farms' Memorandum of Law as a cross motion for summary judgment. "In any event, a court may grant summary judgment in favor of a non-moving party

4

"Every exercise in statutory construction must begin with the words of the text." *N.Y. Legal Assistance Grp. v. Bd. of Immigr. Appeals*, 987 F.3d 207, 216 (2d Cir. 2021) (cleaned up). Where a statute's terms "are clear, the court's job is at its end." *New York by James v. Citibank, N.A.*, 763 F. Supp. 3d 496, 508 (S.D.N.Y. 2025) (cleaned up). A court's role is simply to apply the ordinary meaning of the words at the time the statute was enacted. *Niz-Chavez v. Garland*, 593 U.S. 155, 160 (2021). But courts cannot pick a random definition from a dictionary and choose the meaning of the word. Courts determine a word's definition by examining "the neighboring words." *United States v. Williams*, 553 U.S. 285, 294 (2008) (cleaned up). Importantly, "canons of statutory construction apply with similar force to agency regulations and require interpretation of words in their context with an eye to the

---

even without a formal cross-motion if (1) no genuine issue of material fact is in dispute; (2) the non-moving party is entitled to judgment as a matter of law; and (3) the moving party has had an adequate opportunity to come forward with all of its evidence." *New York Marine & Gen. Ins. Co. v. Travelers Prop. Cas. Co. of Am.*, 632 F. Supp. 3d 303, 305, n.1 (S.D.N.Y. 2022) (cleaned up). As shown in the decision, there is no genuine issue of fact as to defining the production area, the non-moving is entitled to summary judgment, and both parties submitted briefs and were heard at oral argument.

law as a whole." *Ortiz-Valles v. McDonald*, 28 Vet. App. 65, 69 (Vet. Claims 2016) (cleaned up).

Not all parts of an animal feeding operation ("AFO") are considered part of the production area. The Concentrated Animal Feeding Operation regulation defines "production area" as "that part of an AFO that includes the animal confinement area, the manure storage area, the raw materials area, and the waste containment areas." 40 C.F.R. § 122.23(b)(8). The regulation then defines all four areas:

- The animal confinement area includes but is not limited to open lots, housed lots, feedlots, confinement houses, stall barns, free stall barns, milkrooms, milking centers, cowyards, barnyards, medication pens, walkers, animal walkways, and stables.
- The manure storage area includes but is not limited to lagoons, runoff ponds, storage sheds, stockpiles, under house or pit storages, liquid impoundments, static piles, and composting piles.
- The raw materials storage area includes but is not limited to feed silos, silage bunkers, and bedding materials.
- The waste containment area includes but is not limited to settling basins, and areas within berms and diversions which separate uncontaminated storm water.

*Id.* (format altered). Applying the plain meaning canon to §122.23(b)(8), the phrase "that part of an AFO" indicates that all parts of the AFO are not considered part of the production area. *Id.* The negative implication

6

of the phrase indicates that there are parts of an AFO that do not include the animal confinement, manure storage, raw materials storage, and waste containment areas. *See id*. This means that there are parts of an AFO that are not considered part of the production area. In fact, the regulation drafters created four broad sections—with non-exhaustive list subsections—to show that not all parts of an AFO are considered apart of the production area. *See id*. In short, a plain reading of §122.23(b)(8) reveals that not all parts of an AFO are considered part of the production area. *See id*.

The regulation's structure supports this understanding. The regulation defines land application area as "land under the control of an AFO owner or operator . . . which manure, litter or process wastewater from the production area is or may be applied." 40 C.F.R. § 122.23(b)(3). Again, a plain reading of the clause tells the reader that AFO operators can apply waste produced in the production area to certain areas on the AFO that are not a part of the production area. *See id*. Digging further, this definition tells the reader that there are two separate areas: (1) the production area, and (2) the land application area. *See id*. In other words, the drafters' defined two separate terms: one broader term (the

land application area), and one narrower term (production area). These definitions mean that these two areas are different. Thus, the regulation's structure supports a reading that not all areas of the AFO are considered a part of the production area.

And because the entire AFO is not considered a production area, the Court cannot conclude that the inlets and VTA are within the production area. Examining Food Safety's photograph (which Wood Farms disputes):



there is nothing *physically* connecting the lagoon, the grain bins, and the whey tanks (all production areas) to the surface inlet. (Food Safety

8

SOMF, Dkt. 125, pgs. 6-7, at ¶9). That lack of physical connection means that the surface inlets are not within the production area.

Food Safety's contrary argument can be understood two ways: (1) the inlets are within the production area because all land under the control of an AFO owner is part of the production area, or (2) the inlets are within the production area because equipment that Wood Farms uses extends the production area when it tracks pollutants across the AFO. *See* (Food Safety Memo of Law, Dkt. 122-2, at pgs. 7-9; Food Safety Reply Br., Dkt. 126, at pg. 4). Neither formulation of the argument withstands scrutiny.

The first formulation of Food Safety's argument would render §122.23(b)(8) superfluous. Food Safety's argument rewrites §122.23(b)(8), which defines production area, to mirror §122.23(b)(3), which defines land application area. Yet the drafters created two separate definitions. And the Court presumes the drafters intended to create two separate terms with two separate definitions. *See I.N.S. v. Cardoza-Fonseca,* 480 U.S. 421, 432 (1987) ("it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion"). Food Safety's argument would render

9

§122.23(b)(8) surplusage, and this Court declines to do so because courts should "give effect to all of [the regulation's] provisions so that no part will be inoperative or superfluous." *United States v. Harris*, 838 F.3d 98, 106 (2d. Cir. 2016) (cleaned up).

The second formulation of Food Safety's argument extends the definition of production area in a way the drafters did not intend. "*Ejusdem generis* is the statutory canon that where general words follow specific words in a statutory enumeration, the general words are construed to embrace only objects similar in nature to those objects enumerated by the preceding specific words." *Wojchowski v. Daines*, 498 F.3d 99, 108, n.8 (2d Cir. 2007) (cleaned up). Likewise, "the traditional canon of construction, *noscitur a sociis,* dictates that words grouped in a list should be given related meaning." *Id.* (cleaned up). Applying these canons to §122.23(b)(8) reveals that the drafters intended to limit the production area to static locales on AFOs. *See* 40 C.F.R. §122.23(b)(8).

On the other hand, that understanding does not apply to land application areas. That term only defines where "manure, litter, or process wastewater" can be on AFOs. *See* 40 C.F.R. §122.23(b)(4). This definition does not contain the examples of static areas that limit the

10

definition of production area. *See id.* By not including those examples in the land application area definition, the drafters intended land application areas to be broader than production areas. That said, the Court rejects Food Safety's attempt to extend the production area by rewriting §122.23(b)(3) to mirror §122.23 (b)(8).

The Court rejects Food Safety's invitation to define the production area as any area of the AFO where manure or litter may be deposited. At the hearing, Food Safety argued that an area of the AFO becomes a production area if "necessary activity" of the farm deposits a pollutant on that area. (Oral Argument, Dkt. 146, pgs. 50-51, at lns. 22-14). That argument cannot be right. The regulations delineate four categories, and those categories have several subcategories with a catch-all phrase. *See* 40 C.F.R. § 122.23(b)(8). Food Safety's arguments would render the regulatory scheme unworkable because the catch-all provision would swallow the rule. So this Court declines to adopt that argument.

The Court also rejects Wood Farms' overbroad definition of land application area. "Statutory titles and section headings are tools available for the resolution of a doubt about the meaning of a statute". *Fla. Dep't of Revenue v. Piccadilly Cafeterias, Inc.*, 554 U.S. 33, 47

(2008). Yet Wood Farms argues that land application areas—which is defined in the *Concentrated Animal Feeding Operations regulation*—are not part of concentrated animal feeding operations. That argument strains credulity. *Cf. id.* ("The placement of §1146(a) within a subchapter expressly limited to post confirmation matters undermines Piccadilly's view that §1146 cover preconfirmation transfers."). Doubtless, the land application area is land that is part of the AFO.

The post-VTA Runoff Area analysis is far simpler. The parties disagree as to a material fact. Food Safety argues that their image



proves that "approximately 75%" feed and silage leachate "drains toward the southwest inlet and the remaining 25% drains to the

12

leachate collection system." (Food Safety SOMF, Dkt. 122-1, pgs. 24-25, ¶34; Food Safety Memo of Law, Dkt. 122-2, at pg. 9). In contrast, Wood Farms disputes the image and argues that "the apron of the bunk routes dirty water and leachate to the treatment system, blocking the flow of water in the direction [Food Safety] claims." So "silage leachate does not reach the surface inlet." (Wood Farms SOMF, Dkt. 125, pg. 32, at ¶34). And because the parties disagree as to this material fact—whether the leachate is running out of a production area into the southwest inlet—summary judgment is not warranted.

With all that wrapped up, the question becomes whether the discharges from the production area and the VTA are reaching the surface inlets. The Court refuses to decide this on a motion for summary judgment. Trial courts may "deny summary judgment in a case where there is reason to believe that the better course would be to proceed to a full trial." *Anderson*, 477 U.S. at 255. "Particularly where so many complicated issues of fact must be resolved in order to deal adequately with difficult question[s] of law," summary judgment "is too blunt a weapon with which to win the day." *Miller v. Gen. Outdoor Advert. Co.*, 337 F.2d 944, 948 (2d Cir. 1964) (cleaned up) (denying summary

judgment where the issues are complicated). In fact, Courts routinely deny summary judgment when the subject matter is so thorny that the issues are best left to a jury. *See, e.g., Lane v. Cacace*, No. 22-CV-10989, 2025 WL 903766, at *10 (S.D.N.Y. Mar. 25, 2025) (denying summary judgment in a Second Amendment case because, among other things, the legal were issues complex). Here, the better route to disposition is having a fact finder decide the ultimate questions: (1) whether discharges from the production area and VTA are reaching the navigable waters of the United States in violation of the Clean Water Act, and (2) whether any defenses apply. In consequence, the Court denies summary judgment on both issues.

IV.   **CONCLUSION**

**WHEREFORE,** based on the findings above, it is

**ORDERED,** that Center for Food Safety's summary judgment motion is **DENIED** as to the production area issue, and it is further

**ORDERED**, that the production area is defined to be the colored areas depicted in Defendant's Exhibit 1:



and it further,

**ORDERED,** that Center for Food Safety's summary judgment motion is **DENIED** with respect to the post-VTA Runoff Area, and it is further

**ORDERED,** that Center for Food Safety's summary judgment motion is **DENIED** as to the validity or viability of Wood Farms' affirmative defenses.

Dated: February 17, 2026.

                                                          Hon. Mitchell J. Katz
                                                          U.S. Magistrate Judge